We'll hear argument first this morning in Case 14-452, Kansas v. Gleason, and the Consolidated Cases. General Schmidt. Mr. Chief Justice, and may it please the Court, these sentences do not offend the Eighth Amendment. Each of these jurors was able to give meaningful effect to anything and everything he heard and presented in mitigation. The verdicts reflect the reasoned moral response of these jurors to the aggravated brutality of these crimes, the weak claims for mitigation, and the individual assessment of each Respondent's moral culpability. Do you agree, whenever the Eighth Amendment does not require, that it would be better practice for the trial judge to tell the jury what the burden is on mitigators, just to ward off any possibility of confusion? And, in fact, Justice Ginsburg, that now happens in Kansas, subsequent to this case. The State made a decision to alter its pattern instructions, but that's not required by the Eighth Amendment. In fact, the Kansas So why can't we presume it's required by the State law, not the Constitution? I mean, as I'm reading the decision below, the Court is saying that the principles of the Eighth Amendment give voice to or support for the use of this burden, and Kansas is commanding it. Well, I think not, Your Honor. This decision, these decisions, were plainly based on the Kansas Supreme Court's interpretation, not of State law, but of the Eighth Amendment. And I would point out a couple of reasons I believe that conclusion is inescapable. First, the Court's conclusion, which is indicated at page 103 in our application, the summary of what it did, the Court indicated very plainly that it was talking about mitigating evidence as required by the Eighth Amendment, with no reference to State law or State practice whatsoever. Second, this argument has been presented previously when Kansas has been before this Court. This Court rejected a similar argument in Kansas v. Marsh. It rejected a similar argument in Kansas v. Cheever two terms ago. It presumably rejected or at least did not embrace the similar argument made at the cert stage in these cases. And in fact, in the Kansas v. Marsh case the Court said that it was not necessary to mitigate evidence as required by the Eighth Amendment. I'm sorry, Justice Scalia, but how can you explain it if indeed our prior cases are so clear on the point? Justice Scalia, I, of course, don't know how to answer the question. I can only say that this decision, these decisions, clearly are based on that Court's interpretation of the Eighth Amendment. Sotomayor, but that can't be. Already we know, and the Kansas court knew, the dissent pointed out that a burden for mitigating circumstances of preponderance of the evidence is okay. So they can't believe that no burden is required by the Constitution. They know that there is no requirement because the case is mentioned by you and Justice Scalia say that. So it has to be their view of State law. No, Your Honor, I believe it's error, and that's why we're in front of this Court. And I, if there's any questions about that. Scalia, I suppose the issue is not what they believe, but what they said, right? They did, and in fact we don't psychoanalyze lower courts. We look at what they said. And if they said that it's the Eighth Amendment, it's the Eighth Amendment. In the 10 pages of the majority opinion on this subject in the Gleeson case, Your Honor, there are 8 references to the Eighth Amendment. In the dissent, slightly fewer pages in total, but 18 references to the Eighth Amendment. And in the Gleeson decision, it's in our reply at page 8, the Kansas Supreme Court rejected the notion that the subject matter at issue here wasn't required by the Eighth Amendment, and instead wrote both recommended statements from the prior case, the one at issue. Kennedy, if you prevail here on your position, is it necessary for us to remand to the Kansas Supreme Court to determine, for them to determine whether State law would require a different result on this issue? I know there are some other issues in the case, but on this issue. I think not on this issue, Your Honor. Are we permitted simply to reverse outright? I believe you're permitted to reverse outright. There can't be a remand on some other issues, I understand. Correct. We presume there would be further proceedings below on other issues that weren't decided in the case. Why couldn't the Kansas Supreme Court say on remand, thank you for enlightening us about the Eighth Amendment, but we still think that Kansas law, independent of any Federal constitutional requirement, requires juries to be told what the burden is. They could do that on remand. Justice Ginsburg, that would, of course, be an issue that we would argue on remand if it were briefed. That's not what they did here. And, in fact, if this Court does not correct the Eighth Amendment error, I would respectfully submit we'll never get to that question on remand, because the Eighth Amendment, that Court's interpretation of it, will dispose of this case. What about the other? Didn't they say something about an admissible hearsay having prejudice, caused prejudice in the Carr case? In the Carr case, there was an issue with respect to that, Justice Ginsburg. It is not part of the questions that were presented or being argued in front of this Court. It was, as you know, a voluminous record with many, many issues discussed. The Kansas Supreme Court's decision below should be reversed by this Court because it made two errors. First, the Kansas Supreme Court incorrectly found in the Eighth Amendment what the dissent called a per se requirement. They found that there was a requirement in the Eighth Amendment for an affirmative instruction that mitigation need not be proven beyond reasonable doubt. Breyer, to go back to the question that Justice Ginsburg was asking, as we say, this Court has never held that there is an absolute requirement that you give the reasonable doubt, don't say it's no reasonable doubt in a mitigating case, just what you said. Correct. And we send it back because, as you said, they just — if their law in the State was different, they've changed it. When they changed it, did they apply the change retroactively? No, Your Honor. And, in fact, if this Court — What did they say? The pattern instructions in Kansas that would be applicable in a circumstance like this on this subject have been changed prospectively, and we now use them.  I don't believe that's been scrutinized, Your Honor. How can you retroactively give an instruction, right? Well, you very simply say he has to have a new trial. That's how. I mean, you simply say a new sentencing hearing. But, Your Honor, of course, there would be no need for a new trial if this Court will correct the Eighth Amendment error, which is what we're trying to do. There would be a need if Kansas law, as is now revealed by their pattern instructions, suggests that you do have to give the instruction that's required, that the defendant wants. Then you'd have to have a new sentencing proceeding, wouldn't you? No, Your Honor. Why not? Not unless that instruction were to apply retroactively to this case. And that question, of course, is not presented. In fact, there are currently nine persons under sentence of death in Kansas. And this issue, this Eighth Amendment issue, as our Court has expressed it, is present in six of them. So two-thirds of the death penalty cases in our State are negatively affected in the event this Court were to decline to correct the Eighth Amendment error and allow the manner that it's done. How was the change to the pattern instructions made? Who made it? There's a pattern instruction committee, Your Honor, that develops these pattern instructions. Is it approved by the Supreme Court, or is it divorced from the Supreme Court? I believe that's correct, but I don't want to swear to that, Your Honor. I believe it's correct that it is approved by the Court. I want to double-check on that point, Your Honor. Okay. My thinking is the following, so you'll understand why I asked this question. It, I think, could be the case that you're right, that this Court has never held that the Eighth Amendment requires giving such an instruction. Next question. Should it now hold it? Well, the answer to that question could be this is not a good case to decide that, because it may be that the Kansas court has held it as to the future and may apply the future rule as to the nine people who are involved in the past, therefore send it back. What do you think of that reasoning? Probably not much, but I'd like to know your reasoning. Respectfully, I share your conclusion on that point, Justice Breyer. Isn't it true, General Schmidt, that it makes a big difference whether this is done under the Federal Constitution or under Kansas law? Presumably, the Kansas Supreme Court understood that it had the capability of basing its decision on Kansas law. But if it did that, it would have to take responsibility for the decisions in these cases, which involve some of the most horrendous murders that I have seen in my 10 years here, and we see practically every death penalty case that comes up anywhere in the country. These have to rank as among the worst. So it didn't take responsibility for that. It said it's the Eighth Amendment and we have to apply the Federal Constitution. Now, maybe they will say, well, we're going to say that Kansas law requires this, but then it's their responsibility. Isn't that true? Justice Alito, I of course won't speculate on what the Kansas court was reminding you, but I do. Well, I wasn't speculating on why they did what they did, but the consequences of basing it on the Federal Constitution, one of the consequences of basing it on the Federal Constitution is that they don't have to take responsibility for it. I have no ability to dispute that, Your Honor. Scalia. Do you have retention elections in Kansas? We do, Your Honor. And the fact how many people are there on death row in Kansas? There are currently 900 sentenced with a 10th. Which would suggest that Kansans, unlike Justice Breyer, do not think the death penalty is unconstitutional, and indeed very much favor it, which might suggest that a retention election that goes before such people would not come out favorably for those justices who create Kansas law that would reverse these convictions. I'm just speculating, of course. Justice Scalia, all I can say is that in these cases, it's certainly apparent to us, and I think to any fair reading, that the Kansas court relied on the Federal Eighth Amendment in making these decisions, and absent correction of those errors by the court will continue to do so. Sotomayor, can I ask what a court is supposed to do when it's told its own lower courts three times before this case or two, you must give this instruction? What what's the court supposed to do? Are you asking about what the Kansas Supreme Court is supposed to do in that case, Your Honor? Yeah. Whether the Constitution requires it or not, it has said the better practice is to give this instruction. What's a court supposed to do? Say willy-nilly my lower courts can disagree with me and not do it? Justice Sotomayor, no, and I would leave it to the Kansas court. Under Kansas law and practice, it is, of course, the Supreme Court of the State to determine what the appropriate step would be under State law, but what the Kansas court is not supposed to do in that circumstance is pivot to the Eighth Amendment and make a Federal decision that is incorrect under this Court's presumption. Right. And it can't, and it can't by doing so immunize itself from review in this Court, and that's Michigan v. Long, which I don't know if it was cited in the brief, but Michigan Long, to Justice Alito's point, made it very clear that a State court can't hide behind a Federal law and be immune because there might be a State law predicate. We have to see what they wrote and revert. And this, I assume that Kansas would pride itself on being cited in other jurisdictions. And if it's wrong and it uses a Federal calculus that's incorrect, it's this Court's duty to reverse. Yes, Justice Kennedy, I certainly agree. And to that last point on other jurisdictions, we've identified, and they're in our briefs, at least five other States that we believe are similarly situated, where they actually impose no burden but don't require an affirmative instruction. And we believe, notwithstanding the back and forth in the briefs, that the Uniform Code of Military Justice looks much more like the Kansas system on this point than on what the Kansas Supreme Court says is constitutionally required. Kennedy, I suppose that if it is true, that if you're a juror and you're considering whether or not to grant mercy, that's not something that's easily subject to a burden of proof analysis one way or the other. If a juror thinks, I have sympathy for this person or I want to grant mercy, that's not really the kind of fact, like you're 18 or you're 21 or your father did or didn't abandon you, that can be proven with a burden of proof of any sort. Certainly correct, Justice Kennedy, and of course a mercy instruction was given in each of these cases. And in addition, separate and apart from the mercy instruction issue, this Court has in the past looked at what you've called catch-all instructions, like the Factor K instructions from California, has looked on them favorably. And in these cases, there was a catch-all instruction given as well. It's in Instruction 7 on Gleason 6 and 8 with respect to the Carr cases. So there was both a belt and suspenders, alternate option. Sorry, what does that mean, a catch-all instruction? It's the language in the last paragraph of Section 7. It reads this way, if I may, Justice Kagan. You may further consider as a mitigating circumstance any other aspect of the defendant's character, background or record, and any other aspect of the offense which was presented — not proven, presented — in either the guilt or penalty phase which you find may serve as a basis for imposing a sentence less than death. And to Justice Kennedy's point, that's clearly not a finding subject to some burden of proof. It's an open-ended invitation to consider and weigh and give effect to anything else these jurors think appropriate in rendering a reasoned moral judgment. Didn't the Court — I'm reading that from Gleason, and that's also in Carr? Yes, Your Honor. It's in Instructions 6 and 8 in Carr, similar language. It may not be exactly identical, but it's substituted. Didn't the Kansas court say, yes, we have that, but the only burden of proof in any of the instructions was in aggravating circumstances and that the State bore that burden, and it pointed to the fact that aggravating and mitigating were mentioned in the same clause five or six times with no explanation of what the burden was for mitigating? The Kansas court thought that the jurors could be confused or would be confused by what burden of proof was needed. Justice Sotomayor, and that's the second reason we would respectfully ask this Court to reverse the Kansas court, in addition to the Bright Line Per Se rule. The Kansas court purported it said it was applying this Court's instruction from Boyd v. California to test whether or not the Eighth Amendment is offended by instructions that are alleged to be ambiguous or confusing, which I think is what's happening there. Kansas court said it was applying Boyd, but then it went on to conduct no actual Boyd analysis other than what Your Honor points to, which is simply the State said repeatedly in both cases that there is a burden of proof beyond a reasonable doubt that the State must prove with respect to aggravators and also with respect to the weighing factor. And the mere silence on the other side somehow led the Kansas court to conclude that Boyd was violated because jurors would have inferred what was imposed on the State must also have been imposed on the Respondent. I just don't think that follows either logic or natural language. Sotomayor, I think what they're saying is that some jurors would be confused. And certainly there have been jury studies to indicate that jurors are often confused generally about burdens of proof. Justice Sotomayor, I certainly agree that is what they seem to be saying, but the test this Court has adopted and replied repeatedly since Boyd is not that there is some speculative possibility in a hypothetical circumstance somebody might have been confused. It is that there is a showing that there is a reasonable likelihood that these jurors applied their instructions in a way that prevented them from considering constitutionally relevant mitigation evidence. There is no showing of that. Scalia. It is such common sense that there is a maxim of interpretation that invokes it. When somebody says interest-free loans for people with good credit, it implies that there are not interest-free loans for people who don't have good credit, inclusio unius, exclusio alterius. And if one says there are aggravating factors and mitigating factors, and you must prove the aggravating factors beyond a reasonable doubt, the normal understanding is you don't have to prove it beyond a reasonable doubt for the mitigating factors. That's such common reasoning that any juror who doesn't follow it is certainly not the typical juror and not the person for whom the jury instructions have to be devised. Sotomayor. Well, the jury instructions don't have to be devised necessarily for the Court. They should be understandable to jurors. And I doubt very much that any juror has heard of that maxim. But putting that aside, the Kansas court, which has much more experience than we do with trial court decisions, has determined that confusion exists or can exist. Why isn't that enough for us? Your Honor, I would point you back again to the concluding paragraph, because I think it illustrates my response, the suggestion of the response throughout the record, but it illustrates it well. Again, back on page 103 of the Gleason appendix, this is what our court said. The district court's instruction on mitigating circumstances failed to affirmatively inform the jury that mitigating circumstances need not be proven beyond a reasonable doubt. So there was silence on that point. Next sentence. And the penalty phase instructions as a whole exacerbated the error because they referred only to the State's burden of beyond a reasonable doubt, which, of course, will always be true because it's constitutionally required that the jurors be informed that the State, the government, bears that burden beyond a reasonable doubt. The Kansas court then concluded in the next sentence — I won't read it because I've cited it before — but under these circumstances, in other words, when there is an instruction that the State must prove beyond a reasonable doubt and there is silence on the other side, we conclude there is a reasonable likelihood that the void is violated. I'm summarizing, of course. It is conclusory and nothing else. In other words, it is back to that per se application that was novel in the Kansas Supreme Court's holding. They gave it the gloss of void. They said they were applying void, but they misapplied this Court's instruction from void and instead merely said, here's our void analysis, there's a per se violation because there is beyond a reasonable doubt instruction correctly for the State and silence on the other side. No other indication of juror misapplication or confusion. Justice Scalia, back on the point that you were raising, I would just say that it is perhaps ironic is the correct word, but frustrating from the standpoint of the government in this case, the State in this case, that we bent over backwards to make clear to these jurors the heavy burden borne by the State. We did repeatedly tell them at multiple places the State bears a burden to prove aggravation beyond a reasonable doubt and to prove on the weighing factor, and that the death penalty should be imposed. The phrasing is in there. It's a normative phrase. It's obviously not subject directly to a burden of proof. And because we told them that repeatedly to make clear how heavy the State's burden was, that now has turned into an argument that we somehow misplaced the juror. Sotomayor, the car records are very thick, and I would say on Gleeson I think it's bright line very clear we conceded the existence of all but two of those mitigating evidence. So I think Gleeson is a clean example on behalf of the State. Carr, I admit, is a much longer record and has a lot more back and forth in it. You had expert testimony and some back and forth on that. But even in the Carr case, this Court has instructed since Boyd and has done so repeatedly that in determining whether or not there's a reasonable likelihood of unconstitutional juror confusion, if the jurors thought they couldn't consider something, you look at the context of the entire trial. And if you look at the overall instructions that were given in the Carr case, you'll also see that the Carr prosecutors, I'd refer the Court to pages 392 and 393 of the Joint Appendix as well as 442 and 443 of the same, the prosecutor told the Carr juries that the jury's task is, quote, to research and to analyze and to distribute the information and to weigh it and measure it and turn it upside down and look at it backwards and to have a healthy discussion about the relative merits of that which you have heard in this courtroom. And then went on at the secondary site I gave you to ask the jury in the Carr cases to render a death verdict, and I quote, because you have looked and listened to all the evidence and the evidence warrants that kind of punishment. Anything that would reduce culpability has not been presented here. I offer those as examples, Justice Sotomayor, to make the point that it is, of course, always possible, particularly when dealing with the transcription of oral statements made during trial, to find a phrase here or there that in hindsight perhaps was inartfully crafted. But the overall thrust of these instructions, the arguments of counsel, the nature of the evidence that was put on to Justice Kennedy's point was that these jurors were told to consider and weigh everything. In fact, they were literally told that phrase in Instruction 2, to consider and weigh everything admitted into evidence that would weigh on aggravation or mitigation. It was clear they were given an open-ended instruction and at that point. Kagan. But, General, if I can understand your argument, you are saying not only that that analysis would come out the State's way, but you are saying this, the lower court really never did that analysis at all, right? It didn't think that it was doing that analysis. It didn't think that that analysis was necessary because it thought that there was just a per se rule that one had to give this instruction, is that correct? No, Justice Kagan, that's not. What I'm saying is that the lower court correctly identified Boyd as the proper analysis, said that was what it was doing, but then wholly misapplied Boyd and instead conjured this per se rule. Their misapplication of this Court's precedent in Boyd is what resulted in their incorrect conclusion that the Eighth Amendment requires this sort of per se instruction. So it's not just that they didn't get to what they should have done and they did something different. It's that they tried to do what they should have done under this Court's precedent. They just did it wrong, and that's why we ask conversion. I find that a little bit confusing. It sounds like they just sort of cited Boyd but failed to pay attention to anything Boyd said about what the analysis ought to be and instead substituted their own analysis, which was a per se rule deriving from the Eighth Amendment. Well, except, Your Honor, to your point about citing Boyd, they did more than cite Boyd. They also recited some of the concepts from Boyd. I mean, for example, the Court said, and I believe I already mentioned this passage to you, our Court said that they looked at the context of the trial, which is something that Boyd says must be done in a proper Boyd analysis. But in their conclusion, the prosecutor's statements made matters worse, notwithstanding the fact that this was already discussed with Justice Sotomayor. I just don't believe that is a fair conclusion or an accurate conclusion. Sotomayor, what a wonderful system we've created. We give, even when a State court is wrong in convicting somebody, so long as they're reasonably wrong, we uphold them. And when they're wrong on a legal conclusion applying our test, we jump in and turn and reverse them, right? Justice Sotomayor, all I can say is on this case, our Court was wrong under the Eighth Amendment. We would ask for reversal. And, Mr. Chief Justice, with that permission, I'd like to reserve the balance of my time. Thank you, General. Mr. Green? Mr. Chief Justice, and may it please the Court, I'd like to first address Justice Sotomayor's questions briefly. Justice Sotomayor, you were correct. The Kansas Supreme Court has three times addressed this issue before, not two times. There was a case cited in the submission that we made to the Court on Monday. That submission was the objection to the jury instructions offered by counsel for Jonathan Carr and Reginald Carr. In that objection to the or the, excuse me, the affirmative jury instructions offered by those attorneys, in those affirmative instructions, they explained that one of the reasons why they wanted an instruction that the jury should be told no beyond a reasonable doubt standard applies to mitigating circumstances is a case called Harmon. And that is cited at, and again, it's in our submission, 254, Kansas 87 from 1993. Kansas had a point. Ginsburg-Garza That's not true of the Gleason case. There was no, am I right, that there was no objection to the instructions given on mitigators in Gleason. You pointed out in your letter there was in Carr. Sotomayor That's correct, Your Honor. That's correct. But I submit for this. Ginsburg-Garza And did you ask, oh, it was the court in Gleason, was the sentencing court, asked to charge that mitigators need not be proved beyond a reasonable doubt. Was there any request to charge that was turned down? Sotomayor No. There was not in Gleason, Your Honor. But again, these cases are consolidated for this purpose. And my friend on the other side of the podium here has conceded that these instructions are identical for purposes of the Eighth Amendment analysis that we're going to do. So we do have a preserved objection. But it doesn't matter anyway. We would submit, Justice Ginsburg, because Kansas has a no-waiver rule for such failures to object in the Gleason case and in any event the Kansas Supreme Court passed on it. But I want to get back to what Kansas said about in the Harmon case. It said that the jury instructions were, and these are the same jury instructions here, in a mandatory minimum case. Kansas has a bifurcated proceeding in mandatory minimum cases. These same jury instructions were confusing, and for precisely the reason that we have here. Then we have the Claypass case that comes later. In the Claypass case, the courts in the Kansas Supreme Court's analysis is exactly this. The instruction is okay on the unanimity principle for Mills and McCoy purposes. So it's okay. It's okay. But for purposes of understanding how mitigation evidence is to work, it's confusing. No citation to Federal authority. None whatsoever. And so, they say, there should be an instruction given to every penalty-phase juror in Kansas, jury in Kansas, and that is, first, let's have the non-unanimity instruction, and then let's have the instruction that says, no, beyond a reasonable doubt. Scalia. I don't understand the point you're getting to. What is your point? That this was, this decision was based on State law? Yes, Your Honor, that it was based on State law. And in fact, if you go to Scott, the next decision in the proceeding, Your Honor, Your Honor invited us to look at the cases. If you go to Scott, the Court says the same thing. We're reiterating what we said in Claypass, and by the way, we think that implicates Federal law. I thought the whole point of our decision in Michigan against Long was to make it clear to State courts that we weren't going to do this kind of thing. We weren't going to try to look, well, how many Federal sites, how many State sites? Unless it's clear that it's based only on State law, then we assume there's the Federal question and Federal basis in that case. And I assume your friend was correct about how many times the Eighth Amendment was cited. I think that's probably true with respect to this decision. I would call the Court's attention to the Gleason Pet App 102, in which the core statement of the Kansas Supreme Court there is an interpretation of Kansas State law. With respect to your question of the State law, I think it's a good rule or not, but it is the rule that says if there's any doubt, this Court will assume that it's the State court was going on the Federal ground, not the State ground. I understand that, Your Honor, and I would submit that if you look at the history of this jury instruction rule that the Kansas Supreme Court has announced, which ultimately was enshrined in the Kansas Pattern Jury Instructions, that does rely solely on State law and solely on the Kansas Supreme Court's decision or interpretation of its own State law.  a little bit. Please. Kennedy, are you asking us to dismiss the case because it's an adequate and independent State ground? I am asking you, first, to issue an opinion that would say the origins of this rule are not Eighth Amendment. They're, in fact, Kansas State law, the Kansas Supreme Court's interpretation of its own statute. And second, the Court might consider dismissal of the case. But to answer your earlier question to my friend on the other side of the podium, Justice Kennedy, I — it would be difficult to imagine a circumstance in which this Court wouldn't say, well, you were wrong, Kansas, about the Eighth Amendment here, and therefore, we're going to remand so you can resolve this issue about whether or not this is, in fact, a Kansas Supreme Court reading of Kansas State law. But if this Court determines that this instruction is not confusing as a matter of Eighth Amendment law, that surely has a significance, I would think it would have a significance, on any remand proceedings that might take place. And it has additional significance for the other jurisdictions that use this and other States that use this instruction. So surely we have something significant and necessary to decide under the Eighth Amendment. It may be that — and that is why my first alternative suggested was that the Court take a look at this, and maybe this is the case that's bracketed with Michigan v. Long. There's a sufficient history of Kansas Supreme Court interpretation of Kansas law that would allow the Court to say this isn't a Michigan v. Long case. If a State supreme court simply says, look, we have a decision here, we think it's a Michigan v. State law, and by the way, we have support under Federal law, that's — that is not a Michigan v. Long case. Roberts Well, presumably, the Kansas Supreme Court is familiar with Michigan v. Long, as we are, and they're on notice that if they start putting the Federal authorities mentioning the Eighth Amendment eight times, that the Court is going to look at it as a decision based on Federal law. The whole point of Michigan v. Long was that — so that we wouldn't have to do what we've been doing for the last 10 minutes, which is debate whether a decision that mentions both State and Federal law is based on State or Federal law. Well, I won't — I won't waste more time with that. Of course, if, you know, if they didn't read our Eighth Amendment cases, maybe they also didn't read Michigan v. Long. I mean, that's entirely understandable. I'm going to — I'm going to demonstrate to you in a minute that they did read your Eighth Amendment cases, and that they got it right, Justice Scalia. But — Alito, would it not be true that the Kansas issue, the Kansas law issue could be raised in a State collateral proceeding? Why is a remand necessary? Well, in part because if it's a Kansas collateral proceeding, the presumption of legality and finality would attach on direct review. This case is still on direct review. And so I would submit, Justice Alito, that the Kansas Supreme Court ought to have the opportunity in the first instance to sort this out. In the ordinary case, let's say a State supreme court decides an issue. They make no reference whatsoever to State law. They base it on the Federal Constitution. It comes up here. We reverse. We would not remand and say, well, you didn't say anything about State law, but it's possible that you might want to find that the same rule applies under State law. We wouldn't do it in that situation, would we? In every case like that, we would remand? I don't know about every case, but I can imagine that the Court would want to go back and say, well, look, Federal law doesn't work this way, but it — but, you know, Kansas Supreme Court or State supreme court, if you think it works another way, fine. Alito, is that what we have done in such cases? We remanded all those for them to say, well, you didn't mention State law, but maybe you want to think about State law? I haven't seen a case like that, but to go to the Chief Justice's question, Michigan v. Long was kind of the reverse of this case. It wasn't using Eighth Amendment jurisprudence to support, or Federal jurisprudence just to support, to add additional weight to the decision. It was the basis of the decision. Alito, if we assume for the sake of argument that we would not do that in every case, then what you are proposing is that we do it here because you think there's a sufficient — there's sufficient uncertainty about the basis for the decision. And then we're going to get into the situation in all of these cases of deciding, is there enough? Well, they cited some State cases that might — we're going to have to be making these decisions in every one of these cases. Well, I would submit that this would be such a case, especially given the history of the Kansas Supreme Court's decisions on this issue interpreting its own statute. But if you — if I might, Your Honor, let me — The other States that have no mitigating burden, do you know how many of them require an instruction just like this one? Yes. We cited in our brief, our Gleason brief, at pages, I think, 27 and 28, Your Honor, that there are 24 States that expressly require a statement to the jury about what the burden of proof is with respect to mitigating circumstances. That is out of 31 States remaining in the United States that have the death penalty, Your Honor. But you are not saying that that's required by the Eighth Amendment, is that right? You're not advocating a per se rule that such instructions are necessary? No. That's right, Justice Kagan. We're not — we're not advocating that kind of per se rule. In fact, one could imagine a set of circumstances — a set of instructions that are silent with respect to mitigation, but nonetheless would pass muster under the Eighth Amendment. So could I talk about the circumstances of this case? Please. Which is, you know, you have an instruction here that is unfortunate in its juxtaposition of the reasonable doubt standard and the reference to mitigating circumstances. And, you know, it is unfortunate, and I can see why they changed their pattern instructions. But we've said that the analysis is a holistic one. We look at everything. You also have this mercy instruction. You have a catch-all instruction. You have in both cases arguments by the prosecutors that indicate fairly clearly that this is really all up to the jurors. In Gleeson, it says mitigating circumstances are every juror's individual choice. In Carr, the prosecutor says anything in fairness may be considered as extenuating. So I guess the question is, even if this is a really unfortunate wording in the reasonable doubt-slash-mitigating-circumstances juxtaposition, why doesn't all of this other stuff indicate that no juror was likely to be confused? Because the unfortunate wording that Your Honor refers to is repeated throughout these instructions. Please let me demonstrate here. With respect to the findings of aggravating circumstances, every time the Court is told that it must find aggravating circumstances beyond a reasonable doubt, the same sentence says, and any mitigating circumstances found to exist. There is repeated parallelism in these instructions with respect to the use of the verbs. Let's go to Justice Scalia's point earlier with respect to what a reasonable juror would have known. The juror, if you look at instruction number 1, instruction number 1 says, reminds the jury that the defendant has been found. Kennedy, in which case? Gleeson? Yes. I'm sorry, Your Honor. This would be in our Gleeson app, appendix 1A. Instruction number 1 says that when a defendant — excuse me — the laws of Kansas provide that a separate sentencing proceeding shall be conducted when a defendant has been found guilty. Now, the verb find or finding appears seven times in the — throughout the instructions, saying that the jury must find mitigating circumstances. Three times in the instructions, at crucial points in instruction number 10, which I'll ask us to look at in a minute, and instruction number 12, which is the verdict, the jury is referred to — the jury is asked to make findings with respect to aggravating circumstances. So it's the same exercise throughout. But the jury was also aware that there was a big difference between aggravators and mitigators. They were told they had to be unanimous on the aggravators, but on mitigators, each jury — each juror was to make the determination for herself, and moreover, that the same mitigator need not be found by all the jurors. So the aggravators, unanimous, they all have to agree on the aggravator. Ginsburg, one could say this one, the other could say that one, and that would be okay. Well, I might agree with that, Your Honor, except for the jury was expressly told in instruction number 7 that with respect to mitigators, it didn't have to be unanimous. However, the jury, the instructions went on to continue to draw parallels with respect to the burden of proof between finding mitigators and finding aggravators. Scalia. Don't you think it's sort of hard to contemplate each juror's ability to find mitigators on his or her own without regard to whether others find the same mitigator? Isn't that somewhat incompatible with the juror's belief that the juror had to find it beyond a reasonable doubt? My goodness, if it's beyond a reasonable doubt, you would think every other juror would find the same mitigator. And they were expressly told. They don't have to find the same mitigator. Beyond a reasonable doubt is the only standard that the jury has offered, Your Honor. It's the only one that they know. It's the one that they've sat through the guilt phase with. It's now the one that they're trying to apply in the sentencing phase, executing a moral judgment as to whether a defendant should live or die. So with respect to what jurors might say to one another in the jury room, one can say that one juror says, mercy, I'm not, you know, maybe there should be mercy. Another juror says to that juror, well, I didn't see enough evidence for that. I mean, are you certain mercy should be applied here? No, I, you know, you have to be certain that mercy applies here. I don't think that's a far-fetched notion at all, especially when you look at an instruction like number 10, which is on page 5A of the Joint Appendix. And instruction 10 draws an express parallel and uses the verb to find, Your Honor. If you find unanimously beyond a reasonable doubt that one or more aggravating circumstances exist and that they are not outweighed by any mitigating circumstances found to exist, then you shall impose a sentence of death. Let's jump down to the next paragraph. The next paragraph says, however, I'm sorry, page 5A of the Gleeson appendix. The next paragraph says. Kennedy, in the red brief, it's also in the petition for writ of certiorari appendix, the white appendix, Gleeson 133, page 133 of the white. The second paragraph of instruction number 10 says, however, if one or more jurors is not persuaded beyond a reasonable doubt on the burden of proof in the paragraph above. So, again, the jury is called to look at the beyond the reasonable doubt standard when assessing both aggravating and mitigating circumstances in parallel. And, again, this is the only standard that the jury has been exposed to throughout  Ginsburg. Ginsburg. Ginsburg. Your proposal is that the flaw was not telling them, mitigators don't have to be shown beyond a reasonable doubt, but that still doesn't tell the jury what the burden of proof is on mitigators. Why are you urging beyond you don't have to find beyond a reasonable doubt, okay. So what do you have to find in order to accept a mitigator? It doesn't expressly say that. And, Justice Ginsburg, that's the whole problem, is that I respectfully disagree with Justice Scalia. A lawyer might look at these instructions and say, aha, the fact that there is an absence or a silence with respect to what the burden of proof is as to mitigating instructions creates a negative implication. Well, I have the same question. Suppose the jury has instructed you, mitigators do not have to be proved beyond a reasonable doubt, and then the jury sends a question, well, what is the burden of proof on mitigators? How should the trial judge answer that? In Kansas, the answer is it's a burden of production and a burden of production only. And all that means is that we're asking under the Eighth Amendment, or at least that's my interest, under the Eighth Amendment what is required. Well, in response to Justice Alito's question, I didn't mean to interrupt him. Well, it may be just the negative, that there is no burden of proof, and each of you as individual jurors should consider all of the evidence. I mean, it's about weighing, and maybe the judge could say to the jury, you should consider and you should weigh all of the evidence that the defendant has proved. Scalia, it's not a matter of we're asking the factual finding of whether the mitigator existed, not weighing the mitigators against the aggravators, the factual finding of whether the mitigator existed, whether, indeed, this defendant had a troubled childhood or whatever else. What is the burden that the juror has to sustain in order to come to that judgment? Well, consistent with Woodson and Lockett and that entire line of cases, the exact language is, is the jury can't be precluded from considering any relevant mitigating circumstances. So anything, anything that was presented to them? I think you said earlier burden of production. Anything? Well, that's what the instruction said. When you're considering mitigating circumstance, you back on any aspect of the offense which was presented in either the guilt or penalty phase. If it was presented to the jury, they should consider it. I don't know. Well, but that doesn't, I mean, that doesn't speak to the burden of proof. And it does relate to both aggravating and mitigating. It says they have to consider anything that was presented, not things they found beyond a reasonable doubt. If it was presented, they can consider it. If the instruction said that alone, then the instructions might be okay. And that's precisely why we're answering Justice Kagan's question, that we're not saying that the Eighth Amendment commands that juries be instructed. So the instruction said something that you think is okay, consider evidence that's presented. But you say, well, we have to draw a negative inference from what it said about aggravating circumstances to outweigh what would have been an acceptable instruction on its own. I'm saying that consistent drawing of parallels between the two, without stating exactly what the burden of proof is with respect to mitigating circumstance, creates a reasonable likelihood that there would be confusion. Thank you, counsel. Thank you. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. A man is being put to death under jury instructions that are so confusing that there is a reasonable likelihood that some juries would interpret those instructions to bar consideration of the mitigating evidence and others would not. That ambiguity and inequity is impermissible under the Eighth Amendment. Now, the State's answer is the instructions allow the jury in the catch-all provision to consider everything as mitigating. That's irrelevant. There are two fundamentally different questions. The first is the what. What kinds of circumstances count as mitigating? And second is the how. How does a jury determine if those circumstances exist in a given case? So here's a simple equation. The circumstances that count as mitigating, 4A of the lease in brief, any other aspect of the defendant's character, background, or record, and any other aspect of the offense which was presented. Exactly, Mr. Chief Justice. We agree that, for example, the jury was instructed that Reginald Carr's child abuse, if it existed, could be a mitigating factor. The question is how was a jury to determine whether Reginald Carr was abused in the first place as a child? So the catch-all provision doesn't answer that question. Now, General Schmidt's answer is, well, look at the language of instruction too. And, Mr. Chief Justice, I think you were referring to that. This is what they say, what he says in the reply brief at page 14. I was quoting from 7. Okay. Maybe it's the same as 2. In 7, in 7, I don't see quite the same thing. But I think our general point here is that this Court has said repeatedly in Abdul-Kabir and in Braverman that the mere presentation of evidence is enough. The evidence has to be given full effect as a mitigating circumstance. And I understand that different people can look at this set of instructions as a whole and come up with different ways of interpreting them, but this Court's decision in Boyd says as long as there's a reasonable likelihood that a jury could read them in a confusing way and bar the consideration of mitigating evidence, that is enough. Now, Justice Scalia, you said, well, that doesn't square with common sense. What about an example like, quote, interest-free loans for people with good credit? Now, our argument is not simply that the jury instruction said beyond a reasonable doubt, though they did nine times. It's that they coupled the beyond a reasonable doubt with the language found to exist, that mitigating circumstances must be found to exist nine times. And so, Justice Scalia, I think that's the case. If you're considering whether to retire, you said you should be absolutely sure you have enough money to live on, and you ought to think about whether you're going to be bored. You wouldn't think you had to be absolutely sure you were going to be bored. Fisherman, Well, let me just do it, Mr. Chief Justice, with respect to the hypothetical that Justice Scalia said. If the hypo was interest-free loans should be given to those found to have good credit, found to have good credit, which mirrors these instructions, and then the language used found with a certain standard beyond a reasonable doubt or whatever, I think it's absolutely plausible that people would read that instruction and say that applies just as much to people without good credit. They'd apply the same standard, and that squares not just with the experience in the States. At least 24 States are using this. If not every State, they can't point to a single State that says found to exist occurs in the jury instructions nine times. It's not just the absence of an affirmative instruction. It's that these instructions are injecting confusion and uncertainty. And the distinction here is that you can have two men going to the — having committed virtually the same crime with the same aggravating and mitigating circumstances. One will be sentenced to death, one to life, simply because of a legal interpretation of what the jury instructions say. That is not death for the worst offender, Mr. — Justice Alito, that's the death penalty imposed for the worst interpretation of jury instructions. Alito, if I were on a jury and I were told that the burden that mitigators do not have to be proved beyond a reasonable doubt, I would find that confusing, because then I would ask what is the burden of proof on mitigators. And I don't think there's any way really to answer that question. So maybe this is a situation like trying to define reasonable doubt where less is more. It's better not to get into the question of burden of proof at all. Let me just finish this — this suggestion, and maybe it's misdirected. But you mentioned the mitigator of — of child abuse. What would have — if there is any burden of proof, what would be the fact as to which it would apply, the overall category that this person had a bad childhood or that the — the individual was beaten by his mother or beaten by his father or subjected to sexual abuse or was around people who were using drugs? Unless you define what the mitigators are, which can't be done, I don't see how you can apply any kind of burden of proof. Well, Justice Alito, I think this Court has never said that if jury instructions are by silence confusing, that that silence alone is enough to rise to an Eighth Amendment violation. Here, our point is that the instructions themselves injected the confusion. And so I don't think this Court is going to police every possible thing that the jury might thought in their heads. The point is here, they mentioned only one standard, beyond a reasonable doubt. They mentioned it nine times, and they said that the mitigating circumstances had to be found to exist. If the jury interpreted it this way, then the court — then the court would be blessing a jury instruction on beyond a reasonable doubt for the first time ever in its history that said that a jury, all 12 of them, might have believed mitigating circumstances actually existed and could not give it effect. That's what the effect of the — What burden of proof do you think the jury applied with respect to the showing of mercy? Well — They were clearly instructed that they can show mercy. So what — they didn't say anything about the burden of proof. And, Mr. Chief Justice, they were clearly instructed that mercy was a, quote, a mitigating factor. And so they were then told nine times that they had to find a mitigating factor. So you think they had — they would have interpreted that, I have to determine whether to extend mercy beyond a reasonable doubt? Absolutely, Your Honor. I think this Court has said many times that we presume a jury follows its instructions, and this is a perfect example of that. Well, I know, but you're — you're begging the question to say the instruction was this and the jury didn't follow it. I don't — That's — I don't think so, Mr. Chief Justice. I think this is a perfect example of how mercy would have been applied beyond a reasonable doubt. If there was a case for mercy, after reading all of the — all the sentencing proceedings, it was that Reginald Carr had been abused badly as a child. And that's why mercy should have extended. We are — we're talking about death-qualified jurors here who already can't extend mercy just simply because death is on the line. There had to be something additional. That something additional in the context of this case was all about the child abuse of Reginald Carr. And, Justice Kagan, that's exactly what the State time and again, Joint Appendix pages 250 to 56 said, they — that — that Reginald Carr did not meet his burden of proof on. And so this was front and center at the mitigating phase of the trial. This was extremely confusing, I think, to a jury. And, of course, this Court's decision in Boyd has a far lower standard than that. It's simply just was there something more than a possibility, doesn't even have to be 50 percent, that the jury interpreted the instructions the wrong way. Sotomayor, Mr. Keitel, Kansas has already answered this question, hasn't it? Its requirement is that a jury be instructed both that mitigation need not be proven beyond a reasonable doubt, and second, that the jury be told it has no — that there is no burden of proof. Exactly. And just like in Maryland v. Mills, where this Court under the Eighth Amendment looked to that, here it's significant that not even Kansas is defending the rule that these jury instructions left the jury with the impression of. I mean, indeed, I'm not aware of a single State that does so. There's no amici on the State side saying that this is going to impose any sort of harm to them. This is the most modest fix in the world. It can be done not just with an affirmative instruction. It can be done by just striking out the words found to exist out of the jury instructions. That's all there is to say. What do you think, Mr. Suri, if you — are they supposed to consider things they didn't find to exist? Oh, no. I think it's a bit of a stretch to say found to exist implies a particular standard of proof. I don't think so at all, Your Honor. I think found to exist, that's the most natural way of reading it. And if there's any doubt, just look at instruction number one. The first thing the jury was told — this is that Petition Appendix, page 500 of the Reginald Carr Petition. The laws of Kansas provide a separate sentencing proceeding shall be conducted when a defendant has been found guilty of capital murder. That's what they're told after hearing months of testimony about whether or not the cars committed the crime under what standard? The beyond-a-reasonable-doubt standard. That was the only thing the jury was told, time and again, both at the guilt phase and the nine times in the mitigating phase of this trial. It thinks it's absolutely reasonable for a jury to have interpreted the jury instructions to say that's the standard that applies here. And, boy, if that's the standard that applied in this case, that is unlike any proceeding in Anglo-American jurisprudence to my knowledge. What does it mean to say there's no burden of proof? Well, I think it means that — Every juror decides individually. I think that in Kansas, I think that's right. Now, of course, you could have minimum thresholds, evidence and relevance, and so on, as this Court's decision in Tenard said. This is the opposite. This is the highest standard in all of law, beyond a reasonable doubt. It's never been done. And these jury instructions did so. And, look, I understand that we could read these facts and say these are horrific crimes, as you said, Justice Alito, but so, too, Reginald Carr had a horrific upbringing, and I think the jury was entitled, and this Court's decision in Stringer says, that it is when the injection of an arbitrary factor is put in and two juries could reach different results on the same facts, that violates the Eighth Amendment. Roberts. Thank you, counsel. Case 14-452 is — oh, I'm sorry, you have rebuttal time. You have, in fact, four minutes of it. Chief Justice, I'm anxious on the point. Thank you. Two or three points, as time allows, Mr. Chief Justice. First, on Mr. Catyel's point that the issue here is the how and not the what, I would come back to the point that there was both a catch-all and a mercy instruction here, and I would further point this Court to what this Court has suggested in the past. This Court has fairly consistently suggested that the cure to a locket type of error, that there was something presented that might not have been able to be given effect, would be catch-all or mercy types of instructions. And I would refer you to pages 310 and 11 of Penry 1, where it wasn't the Court, but it was the defense, who requested a mercy instruction that was not granted, and as a result, the case wound up in front of this Court. It would also suggest that you look at page 803 on Penry 2, where this Court suggested, Justice O'Connor writing, that a catch-all instruction well-crafted would have been the cure for the error this Court found in Penry 2. A similar implication at page 242 on Abdul-Kabir, and a similar implication at page 308 of Blystone. So I think Kansas has done here precisely what the Court has repeatedly suggested. Kennedy, I know that you're rebuttal. What's the catch-all instruction you rely on? The catch-all instruction is the last paragraph of instruction number 7. Of 7, thank you. Yes, correct. And the mercy instruction is earlier. I believe it's the second paragraph in Gleeson. Secondly, with respect to Justice Ginsburg's observation that there, a juror would have noticed that there's a difference between the use of finding, with respect to unanimity, or finding in another context, suggesting that this argument's not very persuasive, that the mere use of the word find repeatedly somehow created confusion, I think that's correct. And I think there's other contrast in this record that shows it. For example, with respect to the verdict forms. In those cases where the beyond a reasonable doubt language is included, finding is included with respect to both aggravation and mitigation, but the jurors were asked to check the box on what aggravators they had found. They weren't asked to do anything like that with respect to mitigators. Now, a lay juror being asked to do one task for one purpose and a different task for a different purpose is not likely to conclude that the two tasks are in some way equivalent. Likewise, to the point that was suggested earlier, Mr. Katyal correctly points out that the mercy instruction is described as a mitigating circumstance. That's absolutely true. But it certainly doesn't follow that the jury would have thought that they have to apply some burden of proof to mercy. It's an act of grace. That's the entire point of mercy. And that further suggests that it wasn't reasonable to conclude that reading these words fine time and again somehow led them to an equivocal and equivalent understanding of how they ought to be used. Third, with respect to the Klypas decision, I won't dwell on it, but this is back to the point that was referenced by Mr. Green on the Kansas Supreme Court's referencing of Kansas case law. I would merely point this Court to what this Court itself said in rejecting precisely the same argument in the Marsh case. It's at page 169, where the Court ultimately concluded Klypas itself, State law case, said that they draw upon Klypas itself, rested on Federal law. And the same is true here. The Kansas Supreme Court ---- Breyer. Harman didn't. I'm sorry, Your Honor. Harman didn't. That's correct. Harman was not a death penalty case. It was a pre-death penalty case. And beyond that, Harman was a 1993 case, barely after this Court ---- No, but then there's a succession of references back. No, but the point, Your Honor, is that when the Kansas Supreme Court talked about Harman, this Court only three years previously had laid down the rule that governs this case. It is now well developed what the Eighth Amendment rule is. Harman doesn't say anything about what this Court has been asked to decide. And finally, I would urge the Court to end, I suppose, where we began, which is there is Eighth Amendment error here. And absent correction of that Eighth Amendment error by this Court, it will be the Eighth Amendment interpretation given by the Kansas Supreme Court that disposes of this case, disposes of the other similarly situated cases in Kansas. It's a perfect precedent. Breyer. So as we said just that, the four sentences you quote, they're wrong. Now, as to whether the instruction in content here was too confusing because of the placement of all the arguments you heard, they didn't really go into that, nor did they really go into the question of State law, nor did they go into the question of whether the new State law is retroactive. All those remain open on remand for the parties to ask the Court to consider it, and if the Court decides it's appropriate to raise it at that time, to consider it. Is that satisfactory to you? No, Justice Breyer. Obviously, we'll deal with whatever State law questions may arise subsequently. But this was a confusion. Not just State law, it's a confusion. Sorry.  I wanted to know if it's satisfactory. The answer is no. Thank you, counsel. Case 14-452 is submitted, and we'll hear the second question and the other two cases